UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK                                ECF CASE
————————————————————X
ENEAQUA LEWIS,                                               JUDGE BERMAN

              Plaintiff,

                                             COMPLAINT
     -against-

                                             PLAINTIFF DEMANDS
                                             TRIAL BY JURY

THE CITY OF NEW YORK, NEW YORK                              CASE NO.04 CV 3696(RMB)
CITY CORRECTIONS OFFICER VINES,
NEW YORK CITY CORRECTIONS OFFICER
DAWSON, NEW YORK CITY CORRECTIONS
OFFICER MARTIN, NEW YORK CITY
CORRECTIONS OFFICER PALMER, NEW YORK
CITY CORRECTIONS OFFICER MORENO, MARTIN F. HORN,
personally and as Commissioner of the New York City Department of
Corrections and NEW YORK CITY CORRECTIONS
OFFICERS JANE /JOHN DOE(S) 1-10,

              Defendants.
————————————————————X

      PLAINTIFF ENEAQUA LEWIS, by her attorney DAVID A. ZELMAN, Esq., for her COMPLAINT, alleges upon information and belief, as follows:

## I. PRELIMINARY STATEMENT

1.   This is a civil rights action in which PLAINTIFF ENEAQUA LEWIS (hereinafter "LEWIS") seeks damages to redress the deprivation, under color of state law, of rights secured to her under the Fourth and Fourteenth Amendments of the United States Constitution. On or about May 31, 2003, at approximately 12:00 P.M. while visiting Ray Faller, her boyfriend, at Rikers Island Detention Center LEWIS was detained in a small room with four Corrections Officer, verbally harassed, sexually harassed, threatened, and then physically assaulted. LEWIS was strip searched immediately after being assaulted. Plaintiff also appends state claims.

## II. JURISDICTION

2. Jurisdiction is conferred upon this Court by 28 U.S.C. §1343 (3) and (4), which provides for original jurisdiction in this court of all suits brought pursuant to 42 U.S.C. §1983, and by 28 U.S.C. §1331, which provides jurisdiction over all cases brought pursuant to the Constitution and laws of the Untied States. This Court has pendant jurisdiction over Plaintiff's state law claims.

### III. PARTIES

3. Plaintiff LEWIS resides at 4 River Road, Apt 15B, New York, New York 10044

4. Defendant CITY OF NEW YORK (hereinafter "CITY") is a municipal corporation, incorporated pursuant to the laws of the State of New York, which operates the New York City Department of Corrections, and as such is the public employer of the Defendant officers herein.

5. Defendant NEW YORK CITY CORRECTIONS OFFICER VINES(hereinafter "VINES") was a corrections officer with the New York City Department of Corrections (hereinafter "DOC"), and at all relevant times hereto, acted in that capacity as an agent, servant, and /or employee of defendant CITY and within the scope of her employment. At all relevant times hereto, VINES was acting under the color of state and local law.

6. Defendant NEW YORK CITY CORRECTIONS OFFICER MARTIN (hereinafter "MARTIN") was a corrections officer with DOC, and at all relevant times hereto, acted in that capacity as an agent, servant, and /or employee of defendant CITY and within the scope of her employment. At all relevant times hereto, MARTIN was acting under the color of state and local law.

7. Defendant NEW YORK CITY CORRECTIONS OFFICER PALMER

(hereinafter "PALMER") was a corrections officer with DOC, and at all relevant times hereto, acted in that capacity as an agent, servant, and /or employee of defendant CITY and within the scope of her employment. At all relevant times hereto, PALMER was acting under the color of state and local law.

8. Defendant NEW YORK CITY CORRECTIONS OFFICER DAWSON (hereinafter "DAWSON") was a corrections officer with DOC, and at all relevant times hereto, acted in that capacity as an agent, servant, and /or employee of defendant CITY and within the scope of her employment. At all relevant times hereto, DAWSON was acting under the color of state and local law.

9. Defendant NEW YORK CITY CORRECTIONS OFFICER MORENO (hereinafter "MORENO") was a corrections officer with DOC, and at all relevant times hereto, acted in that capacity as an agent, servant, and /or employee of defendant CITY and within the scope of her employment. At all relevant times hereto, MORENO was acting under the color of state and local law.

10. Defendant MARTIN F. HORN (hereinafter "HORN") is the Commissioner of the DOC, and, as such, is a policy-maker. HORN's principal place of business is 60 Hudson Street, New York, New York 10013. HORN is sued in his official and individual capacities.

11. At all times relevant hereto, Defendant CORRECTIONS OFFICER(S) JANE / JOHN DOE(S) 1-10 (hereinafter "DOE(S)") was /were New York City corrections officers who took part in implementing, enforcing, and /or effectuating the arrest that is the subject policy of this action. At all times relevant hereto, defendant(s) DOE(S) was /were acting in the capacity of agent(s),

servant(s) and employee(s) of the defendant CITY, and within the scope of his /her /their employment as such. Plaintiff is unable to determine the names of these defendant Corrections Officer(s) at this time and thus sues them under a fictitious designation. Defendant DOE(S) is /are sued in his/ her /their individual and official capacities.

## IV. FACTS

12. On May 31, 2003, at approximately 12:00 p.m., LEWIS, a five foot seven inch attractive 21 year old black woman, arrived at Rikers Island Detention Center to visit her boyfriend Ray Faller.

13. During previous visits, LEWIS encountered defendants VINES and MARTIN, and felt as though defendants VINES and MARTIN had acted in a sexually inappropriate manner.

14. During one visit, defendant VINES told LEWIS that she "looks sexy". Defendant MARTIN would often compliment LEWIS on her clothing and figure. On one occasion, in the process of complimenting LEWIS, MARTIN touched LEWIS on her buttocks.

15. On May 31, 2003, LEWIS was scheduled to have a one hour contact visit with Faller.

16. LEWIS went through the necessary security precautions and checkpoints, and met with Faller at the George R. Vierno Center in a room with approximately fifty (50) other people.

17. At approximately 12:20 p.m., defendant MARTIN called Faller away from LEWIS to speak with him.

18. When Faller returned Faller informed LEWIS that MARTIN told him that he and LEWIS were too close to each other and that she should move further away from him.

19. Immediately after Faller relayed this information to LEWIS, MARTIN screamed to them that the visit was over.

20. Faller was told to return to his cell and Faller complied.

21. MARTIN then told LEWIS to stay where she was and wait for her to return.

22. While LEWIS was waiting, a male corrections officer told her that she should get her security pass and leave the facility.

23. As LEWIS was waiting for the door to be opened so that she could leave the visiting room, defendant MARTIN came running up to her and repeatedly screamed and cursed at her, demanding to know where she was going.

24. LEWIS was then grabbed by MARTIN, VINES, DAWSON and PALMER and taken to a separate back room.

25. LEWIS was told to sit down in the room, and a metal door was closed behind her.

26. LEWIS waited in the room for several minutes when at one point she heard someone from outside say "the last bus just left".

27. LEWIS was then told that she should retrieve her identification so that she could be written up for violating the rules and regulations regarding visiting an inmate.

28. As LEWIS went to leave the room, she brushed past defendant MARTIN, who was standing provocatively in front of the door.

29. Defendant MARTIN then shoved LEWIS to the ground.

30. When LEWIS stood up defendant MARTIN punched her in the face.

5

31. LEWIS, stunned, began to cry and asked to file a police report against the defendant corrections officers.

32. Defendant DAWSON then told her to "shut up".

33. LEWIS was told that she could not file a police report, and defendant MARTIN told the other corrections officers that "I want to fuck her up".

34. Defendants VINES and DAWSON grabbed LEWIS and slammed her body against the wall.

35. Defendants MARTIN and VINES then walked out of the room, leaving LEWIS alone with DAWSON and PALMER.

36. During this time LEWIS continually asked DAWSON and PALMER what was going to happen.

37. Upon MARTIN's and VINES' return, MARTIN mockingly stated to one of the other corrections officers "Let's re-enact everything that happened".

38. After making that statement MARTIN again shoved LEWIS to the ground.

39. LEWIS was grabbed by defendants PALMER, DAWSON and VINES, brought to her feet and then MARTIN punched LEWIS in the face a second time.

40. Defendant VINES then asked LEWIS if she wants a "one on one" with MARTIN. LEWIS and MARTIN then began to fight.

41. After a few minutes, the so called "one on one" ended and LEWIS was grabbed by VINES, DAWSON and PALMER. MARTIN then punched and assaulted LEWIS while she was being restrained by the other defendant officers.

42. At some point during this time, a male corrections officer opened the door, and was told by one or more of the defendant officers to leave the room.

43. After approximately thirty (30) minutes, the defendant officers stopped beating LEWIS.

44. LEWIS was then made to remove all of her clothing and was strip searched by one of the defendant corrections officers and defendant MORENO.

45. Approximately 5-10 corrections officers, both male and female, watched LEWIS as she was being strip searched.

46. LEWIS noticed that defendants VINES and MARTIN stared at her with a sexually charged demeanor, particularly staring at her breasts, buttocks, and genitals, as she stood naked.

47. An ambulance was called to the scene and LEWIS was taken to Elmhurst hospital.

48. Due to the injuries that LEWIS suffered on the day in question, she was required to undergo extensive medical treatment.

49. LEWIS was diagnosed with a Cervical disc derangement, Cervical spine sprain/strain, Joint trauma to her right and left shoulders, Lumbar sprain/strain, Lumbosacral radiculopathy, PTNBDD anxiety neurosis with depression, Post Traumatic Stress Disorder, Post Traumatic concussion disorder and TMJ.

50. At no time did LEWIS act in an unlawful way or commit any crime.

51. As a direct result of the Defendants' actions, LEWIS suffered physical injuries, mental injuries, emotional injuries, economic injury, trauma, humiliation, terror, damage to reputation, and other psychological injuries. All of said injuries may be permanent.

52. LEWIS spent approximately thirty (30) hours in custody between her time at

Rikers Island, the 41st Police Precinct and Bronx Criminal Court.

53. On May 31, 2003, LEWIS was charged with NY PL §120.05, Assault in Second Degree, a Class D felony, two counts of NY PL §120.00, Assault in the Third Degree, a Class A misdemeanor, PL §195.05, Obstructing Governmental Administration in the Second Degree, a Class A misdemeanor, and PL §240.26, Harassment in the Second Degree, a violation.

54. Later, the charges of PL §120.05 and PL §120.00 were dismissed and on August 26, 2003 the complaint was converted to an information.

55. Then in November, 2003 all charges were dismissed save for a single misdemeanor charge.

56. LEWIS is vigorously defending the remaining criminal charge against her and fully expects to be vindicated of any wrongdoing.

57. LEWIS was required to appear in Court on numerous occasions so as to contest the spurious charges against her.

58. LEWIS was forced to reschedule personal appointments and miss time from work as a result of the many court dates she was required to attend. The entire ordeal has caused LEWIS anxiety, stress, and extreme complications in her lifestyle.

59. That heretofore and on the 8th day of August, 2003, LEWIS' Notice of Claim and Intention to sue was duly served upon and filed with the CITY; said Notice was filed within ninety (90) days after the cause of action herein accrued and set forth the name and post office address of LEWIS, the nature of the claim, the time when, the place where, the manner in which the claim arose and the items of damage and injuries sustained.

60. That at least thirty (30) days have elapsed since the demand or claim upon which these actions are predicated was presented to CITY for adjustment or payment thereof and that it has neglected and/or refused to make adjustment or payment thereof.

## V. FIRST CAUSE OF ACTION
### Pursuant to §1983 (FALSE ARREST)

61. Paragraphs 1 through 60 are hereby realleged and incorporated by reference herein.

62. Defendants, MARTIN, LEWIS, VINES, PALMER, MORENO, and DOE(S) (hereinafter "OFFICERS") had no justification for arresting LEWIS and no probable or legal cause or excuse to detain and seize LEWIS.

63. That the seizure, detention and imprisonment of LEWIS was unlawful.

64. That defendant OFFICERS intended to confine LEWIS.

65. That LEWIS was conscious of the confinement and did not consent to the confinement.

66. That the confinement was not otherwise privileged.

67. By reason of defendant OFFICERS acts and omissions, defendant OFFICERS, acting under the color of state law and within the scope of their authority, in gross and wanton disregard of LEWIS' rights, deprived LEWIS of her liberty when they subjected LEWIS to an unlawful, illegal and excessive detention, in violation of her rights pursuant to the Fourth and Fourteenth Amendments of the United States Constitution.

68. That in so acting, Defendant OFFICERS abused their power and authority as

officers of the DOC under the color of State and /or local law.

69. That upon information and belief, defendant CITY and/or HORN had a policy and/or custom of arresting and detaining individuals despite the lack of probable cause. Thus, as a result of the above described policies and customs, LEWIS was arrested despite the fact that she had not violated any law or committed any crime.

70. That upon information and belief it was the policy and /or custom of defendant CITY and/or HORN to inadequately hire, train, supervise, discipline and /or terminate their officers, staff, agents and employees, thereby failing to adequately discourage further constitutional violations on the part of their officers, staff, agents, and employees.

71. That as a result of the above described policies and customs, the officers, staff, agents and employees of defendant CITY and/or HORN believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

72. That the above described policies and customs demonstrate a deliberate indifference on the part of the policymakers of defendant CITY and/or HORN to the constitutional rights of arrestees and were the cause of the violations of LEWIS' rights alleged herein.

73. That by reason of the foregoing, LEWIS suffered physical injuries, mental injuries, economic injury, deprivation of liberty and privacy, terror, humiliation, damage to reputation and other psychological injuries. All of said injuries may be permanent.

### VI.  SECOND CAUSE OF ACTION

**Pursuant to State Law (FALSE ARREST)**

74. Paragraphs 1 through 73 are hereby realleged and incorporated by reference herein.

75. That the seizure, detention and imprisonment of LEWIS was unlawful in that defendant OFFICERS had no probable cause to detain, arrest and/or imprison LEWIS.

76. That defendant OFFICERS intended to confine LEWIS.

77. That LEWIS was conscious of the confinement and did not consent to the confinement.

78. That the confinement was not otherwise privileged.

79. By reason of defendant OFFICERS acts and omissions, defendant OFFICERS, acting in gross and wanton disregard of LEWIS' rights, deprived LEWIS of her liberty when they subjected LEWIS to an unlawful, illegal and excessive detention, in violation of State law.

80. That by reason of the foregoing, LEWIS suffered physical injuries, mental injuries, economic injury, deprivation of liberty and privacy, terror, humiliation, damage to reputation and other psychological injuries. All of said injuries may be permanent.

### VII. THIRD CAUSE OF ACTION
**Pursuant to §1983 (EXCESSIVE FORCE)**

81. Paragraphs 1 through 80 are hereby realleged and incorporated by reference herein.

82. That the incident that resulted from the intentional application of physical force by defendant OFFICERS constituted a seizure.

83. That the use of excessive force in effectuating the seizure was unreasonable under the circumstances.

84. That defendant OFFICERS had no legal cause or reason to use excessive force in effectuating LEWIS' arrest.

85. That defendant OFFICERS violated LEWIS' Fourth and Fourteenth Amendment right to be free from unreasonable seizures when they used excessive force against her.

86. That at the time of the arrest, LEWIS did not pose a threat to the safety of defendant OFFICERS.

87. That LEWIS was not actively resisting arrest or attempting to evade arrest.

88. That defendant OFFICERS actions were grossly disproportionate to the need for action and were unreasonable under the circumstances.

89. That by reason of defendant OFFICERS acts and omissions, defendant OFFICERS acting under color of State law and within the scope of their authority, in gross and wanton disregard of LEWIS' rights, subjected LEWIS to excessive force while effectuating her arrest, in violation of his rights pursuant to the Fourth and Fourteenth Amendments of the Untied States Constitution.

90. That upon information and belief, in 2003, defendant CITY and/or HORN had a policy or routine practice of using excessive force when effectuating arrests.

91. That upon information and belief, it was the policy and /or custom of defendant CITY and/or HORN to inadequately train, supervise, discipline, and /or terminate their officers, staff, agents and employees, thereby failing to adequately discourage further constitutional violations on the part of their officers, staff,

agents and employees.

92. That as a result of the above described policies and customs, the officers, staff, agents and employees of defendant CITY and/or HORN, believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

93. That the above described policies and customs demonstrate a deliberate indifference on the part of the policymakers of defendant CITY and/or HORN to the constitutional rights of arrestees and were the cause of the violations of LEWIS' rights alleged herein.

94. By reason of the foregoing, LEWIS suffered physical injuries, mental injuries, emotional injuries, economic injury, trauma, humiliation, terror, damage to reputation, and other psychological injuries. All of said injuries may be permanent.

### VIII. FOURTH CAUSE OF ACTION
### Pursuant to State Law (BATTERY)

95. Paragraphs 1 through 94 are hereby realleged and incorporated by reference herein.

96. That defendant OFFICERS intended to cause harmful bodily contact to LEWIS.

97. That defendant OFFICERS, in a hostile manner voluntarily struck and attacked LEWIS.

98. That defendant OFFICERS had no justification for striking and attacking LEWIS.

99. That defendant OFFICERS contact with LEWIS constituted a battery in violation of the laws of the State of New York.

100. By reason of the foregoing, LEWIS suffered physical injuries, mental injuries,

emotional injuries, economic injury, trauma, humiliation, terror, damage to reputation, and other psychological injuries.  All of said injuries may be permanent.

### IX.  FIFTH CAUSE OF ACTION
#### Pursuant to §1983 (ILLEGAL STRIP SEARCH)

101. Paragraphs 1 through 100 are hereby realleged and incorporated by reference herein.

102. That defendant OFFICERS strip searched LEWIS absent a requisite reasonable suspicion that LEWIS was concealing a weapon or contraband.

103. That defendant OFFICERS had no legally sufficient cause to strip search LEWIS.

104. That defendant OFFICERS violated Department of Corrections regulations by allowing male officers to be present while LEWIS was being strip searched.

105. That by reason of defendant OFFICERS acts and omissions, defendant OFFICERS acting under color of State law and within the scope of their authority, in gross and wanton disregard of LEWIS' rights, subjected LEWIS to an illegal strip search, in violation of her rights pursuant to the Fourth and Fourteenth Amendments of the Untied States Constitution.

### X.  SIXTH CAUSE OF ACTION
#### Pursuant to §1983 (MALICIOUS PROSECUTION)

106. Paragraphs 1 through 105 are hereby realleged and incorporated by reference herein.

107. That defendant OFFICERS, with malicious intent, arrested LEWIS and initiated a criminal proceeding despite the knowledge that LEWIS had committed no crime.

108. That the criminal matter is still ongoing against LEWIS and is anticipated to be

terminated in LEWIS' favor.

109. That there was no probable cause for the arrest and criminal proceeding.

110. That by reason of defendant OFFICERS' acts and omissions, defendant OFFICERS, acting under the color of state law and within the scope of their authority, in gross and wanton disregard of LEWIS's rights, deprived LEWIS of her liberty when it maliciously prosecuted her and subjected her to an unlawful, illegal and excessive detention, in violation of her rights pursuant to the Fourth and Fourteenth Amendments of the United States Constitution.

111. That upon information and belief, defendant CITY had a policy and /or custom of maliciously prosecuting individuals despite the lack of probable cause. Thus, as a result of the above described policies and customs, LEWIS was maliciously prosecuted despite the fact that she had committed no violation of the law.

112. That upon information and belief it was the policy and /or custom of defendant CITY to inadequately hire, train, supervise, discipline and /or terminate their officers, staff, agents and employees, thereby failing to adequately discourage further constitutional violations on the part of their officers, staff, agents, and employees.

113. That as a result of the above described policies and customs, defendant OFFICERS, staff, agents and employees of defendant CITY believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

114. That the above described policies and customs demonstrate a deliberate indifference on the part of the policymakers of defendant CITY to the

constitutional rights of arrestees and were the cause of the violations of LEWIS' rights alleged herein.

### XI.  SEVENTH CAUSE OF ACTION
### Pursuant to State Law (MALICIOUS PROSECUTION)

115. Paragraphs 1 through 114 are hereby realleged and incorporated by reference herein.

116. That defendant OFFICERS, with malicious intent, arrested LEWIS and initiated a criminal proceeding despite the knowledge that LEWIS had committed no crime.

117. That the criminal matter is still ongoing against LEWIS and is anticipated to be terminated in LEWIS' favor.

118. That there was no probable cause for the arrest and criminal proceeding.

119. That by reason of defendant OFFICERS' acts and omissions, defendant OFFICERS, acting under the color of state law and within the scope of their authority, in gross and wanton disregard of LEWIS's rights, deprived LEWIS of her liberty when it maliciously prosecuted her and subjected her to an unlawful, illegal and excessive detention, in violation of the Laws of the State of New York.

### XII.  EIGHTH CAUSE OF ACTION
### Pursuant to State Law (RESPONDEAT SUPERIOR)

120. Paragraphs 1 through 119 are hereby realleged and incorporated by reference herein.

121. That defendant OFFICERS were acting in furtherance of the duties owed to their employer, defendant CITY and/or HORN.

122. That at all times defendant OFFICERS were acting within the scope of their

employment.

123. That defendant CITY and/or HORN was able to exercise control over defendant OFFICERS' activities.

124. That defendant CITY and/or HORN is liable for defendant OFFICERS' actions under the doctrine of respondeat superior.

125. By reason of the foregoing, LEWIS suffered physical injuries, mental injuries, emotional injuries, economic injury, trauma, humiliation, terror, damage to reputation, and other psychological injuries. All of said injuries may be permanent.

WHEREFORE, LEWIS respectfully request that judgment be entered:

1. Awarding LEWIS compensatory damages in a full and fair sum to be determined by a jury; and

2. Awarding LEWIS punitive damages in an amount to be determined by a jury; and

3. Awarding LEWIS interest from the date of the incident; and

4. Awarding LEWIS reasonable attorney's fees pursuant to 42 USC §1988; and

5. Granting such other and further relief as to this Court seems proper.

DATED: New York, New York
May 13, 2004

                                                David A. Zelman, Esq.(dz 8578)
225 Broadway, 38th Floor
New York, New York 10007
(212) 791-7795